RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0266p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MAHIR DAOUD,

        *Petitioner-Appellant,*

        *v.*

SUE DAVIS, Warden,

        *Respondent-Appellee.*

No. 08-1673

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 06-13310—Gerald E. Rosen, Chief District Judge.

Argued: June 15, 2010

Decided and Filed: August 25, 2010

Before: SILER and GIBBONS, Circuit Judges; REEVES, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Sanford A. Schulman, SCHULMAN & ASSOCIATES, Detroit, Michigan, for Appellant. Janet A. Van Cleve, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee. **ON BRIEF:** Sanford A. Schulman, SCHULMAN & ASSOCIATES, Detroit, Michigan, for Appellant. Raina I. Korbakis, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.

_____

## OPINION

_____

SILER, Circuit Judge. Petitioner Mahir Daoud, convicted of the first-degree murder of his mother, filed a petition for writ of habeas corpus, pursuant to 28 U.S.C.

_____

[*] The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

§ 2254. The district court denied his petition and granted a certificate of appealability ("COA") as to one issue: whether Daoud knowingly and intelligently waived his *Miranda* rights. We expanded the COA to include Daoud's claim of ineffective assistance of counsel. For the following reasons, we **AFFIRM**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Police officers found the burned body of Daoud's mother, Teriza Daoud, inside a dumpster in Toledo in 1985. Although the police identified Daoud as a suspect, they never arrested him. In 1994, Daoud spontaneously confessed to the murder to a 911 operator and to two Detroit police officers after jumping in front of their marked vehicle. Daoud waived his *Miranda* rights and gave a detailed account of the murder. At the Detroit Police Department he again waived his *Miranda* rights and repeated what he had told the prior officers. Two members of the Troy Police Department—Sergeant Mark Tuck, a member of the original investigation, and Detective Mitch Lenczewski—went to Detroit to interview Daoud. Daoud refused to speak to Tuck, but waived his *Miranda* rights and gave a detailed, tape-recorded account of the murder, including details about the disposal of the body and his attempts to clean up the evidence.

Daoud was charged with murder. The trial court ordered a forensic examination to determine whether Daoud was competent to stand trial and whether he was criminally responsible for his actions. Based on an examination by Dr. Balay of the Center for Forensic Psychiatry ("Forensic Center"), the trial court concluded that Daoud was incompetent and ordered that he be reexamined to determine whether he was competent to waive his *Miranda* rights when he confessed a month earlier. During the next year, doctors Robert Mogy, Charles Clark, and Thomas Grisso examined Daoud. The three experts disagreed as to Daoud's competency. After hearings on the issue, the trial court excluded all of the confessions, concluding that Daoud did not knowingly and intelligently waive his *Miranda* rights.

The Michigan Court of Appeals reversed the trial court's decision to the extent that it suppressed all of Daoud's statements, reasoning that Daoud's statements before

he was transported to the police station were not the result of a custodial interrogation, and thus did not violate *Miranda*. However, it affirmed the trial court's suppression of Daoud's statements made to the police after he was in custody. Later, the Michigan Supreme Court reversed the trial court's decision in its entirety, reasoning that it erred as a matter of law by wrongly focusing on Daoud's motivation for confessing, rather than considering whether he could understand his *Miranda* rights. *People v. Daoud*, 614 N.W.2d 152, 160-61 (Mich. 2000). The Michigan Supreme Court concluded that Daoud's waiver was knowing and intelligent, and remanded the case for trial.

After a bench trial, Daoud was convicted of first-degree murder and sentenced to life imprisonment without the possibility of parole. With new counsel, Daoud filed an appeal of right in the Michigan Court of Appeals, again raising the admission of his statements and claiming ineffective assistance of counsel based on trial counsel's failure to pursue the insanity defense. The Michigan Court of Appeals remanded the case to allow Daoud to move for an evidentiary hearing before the trial court, pursuant to *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973). On remand, the trial court held a hearing to determine whether to allow the evidentiary hearing, in which Daoud's trial counsel testified regarding his decision not to assert an insanity defense. Based on trial counsel's testimony, the trial court denied Daoud's motion for an evidentiary hearing. It also denied Daoud's motion to appoint another independent examiner to assess the defense.

Appellate counsel filed a supplemental brief in the Michigan Court of Appeals, challenging the district court's denial of the evidentiary hearing and its refusal to permit an independent examination. The Michigan Court of Appeals affirmed Daoud's conviction and sentence. *People v. Daoud*, No. 250166, 2004 WL 2624877, at *4-5 (Mich. Ct. App. Nov. 18, 2004). It concluded that the law-of-the-case doctrine precluded it from revisiting the admissibility of Daoud's confession, that trial counsel's performance was not deficient, and that Daoud had not properly preserved for appeal the trial court's denial of an evidentiary hearing and another independent examination of Daoud. Daoud appealed to the Michigan Supreme Court, which denied leave to appeal.

*People v. Daoud*, 699 N.W.2d 700 (2005).  In 2006, Daoud filed the instant petition for habeas corpus, which the district court denied.

## II.  STANDARD OF REVIEW

Daoud's petition for writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Under AEDPA, we may not grant a petition for writ of habeas corpus unless the state court adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[1]  28 U.S.C. § 2254(d).

## III.  DISCUSSION

### A.  *Miranda* **Waiver**

Daoud contends that he did not knowingly and intelligently waive his *Miranda* rights when he confessed to his mother's murder and that admitting those statements at trial violated his Fifth Amendment rights.  In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court established "certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation."  *Duckworth v. Eagan*, 492 U.S. 195, 201 (1989).  However, a suspect may waive his *Miranda* rights "provided the waiver is made voluntarily, knowingly, and intelligently."  *Miranda*, 384 U.S. at 444.  This inquiry "has two distinct dimensions."  *Colorado v. Spring*, 479 U.S. 564, 573 (1987) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

---

[1]Daoud never cites this standard and wrongly suggests a de novo standard of review applies. Instead, he insists that we review de novo the district court's conclusion on a motion to suppress. Although we do review a district court's decision on a motion to suppress de novo, we do not have before us a motion to suppress.  Instead, we have before us a petition for writ of habeas corpus.  Our review of the district court's legal conclusions on a petition for habeas are subject to de novo review.  Nonetheless, our review of the state court's decision is subject to the more deferential AEDPA standard discussed above.  Because Daoud fails to recognize the appropriate standard of review, he never argues that the state court's conclusions were contrary to or involved an unreasonable application of clearly established federal law.

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran*, 475 U.S. at 421 (quoting *Fore v. Michael C.*, 442 U.S. 707, 725 (1979)).

To be deemed knowing and intelligent, "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring*, 479 U.S. at 574. Instead, "we examine 'the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused,'" *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (alterations in original) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)), to determine "whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time,'" *id.* (alterations in original) (quoting *Spring*, 479 U.S. at 574).

The Michigan Supreme Court correctly recited the standard for the knowing and intelligent prong in analyzing Daoud's claim. *See Daoud*, 614 N.W.2d at 159. In particular, it cited *People v. Cheatham*, 551 N.W.2d 355 (Mich. 1996), which relied on Supreme Court precedent, for the proposition that "'a suspect need not understand the ramifications and consequences of choosing to waive or exercise the rights that the police have properly explained to him'" to knowingly waive his *Miranda* rights. *Daoud*, 614 N.W.2d at 159 (quoting *Cheatham*, 551 N.W.2d at 367). It further explained that "the *only* inquiry with regard to a 'knowing and intelligent' waiver of *Miranda* rights is . . . whether the defendant understood 'that he did not have to speak, that he had the right to the presence of counsel, and that the state could use what he said in a later trial against him.'" *Id.* at 162 (quoting *Cheatham*, 551 N.W.2d at 367). The Michigan Supreme Court's recitation of the law was not contrary to clearly established Supreme Court law. *See Spring*, 479 U.S. at 574; *Connecticut v. Barrett*, 479 U.S. 523, 530 (1987).

Because the Michigan Supreme Court correctly recited the law, we may grant Daoud's petition on this issue only if he can demonstrate that the state court's conclusion was an unreasonable application of that law. We may not issue the writ "simply because [we] conclude[] in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

After considering the testimony of the interrogating officer, and that of the three expert witnesses, the Michigan Supreme Court concluded that "[v]iewing the objective circumstances surrounding defendant's waiver, the waiver was clearly knowing and intelligent." *Daoud*, 614 N.W.2d at 161. In particular, it noted that the experts and the trial court all appeared to agree that the defendant had "'the intellectual capability of understanding the rights which [were] read to him.'" *Id.* at 163 (quoting the trial court). There is nothing to suggest that conclusion was an unreasonable application of clearly established federal law.

The Supreme Court has never directly addressed under what circumstances a suspect's mental illness can impede his ability to knowingly and intelligently waive his *Miranda* rights. In *Colorado v. Connelly*, 479 U.S. 157 (1986), it clarified that mental illness does not affect the voluntariness prong under *Miranda*. *Id.* at 170. However, *Connelly* did not address whether mental illness can impact the knowing or intelligent prong. *See Moran*, 475 U.S. at 421. Most courts have recognized that mental illness is a factor to consider in determining whether a waiver was knowing and intelligent. *See, e.g.*, *United States v. Cristobal*, 293 F.3d 134, 142 (4th Cir. 2002); *see also Hanna v. Price*, 245 F. App'x 538, 543 (6th Cir. 2007).

At an evidentiary hearing conducted in September 1996, Dr. Mogy, the evaluation unit assistant director at the Forensic Center, and Dr. Clark, an independent evaluator assigned by the court, testified regarding Daoud's ability to waive his *Miranda* rights. Dr. Mogy testified that he believed there was a "reasonable possibility" that Daoud "did not appreciate the consequences of his confession." In particular, he opined that Daoud's delusional belief that God would protect him if he confessed interfered with

his ability to waive those rights. Nonetheless, Dr. Mogy stated that Daoud "did at some point seem to be aware that he could go to jail for making these statements." He also recognized that Daoud's confession followed a logical sequence, that he was trying to confess, that he understood the officer's questions, and that he indicated he understood his rights. Dr. Mogy even admitted that Daoud probably understood the literal aspects of his rights. However, because Dr. Mogy believed that his motivation for confessing was impacted by his mental illness, he concluded that he could not knowingly and intelligently waive his *Miranda* rights. Dr. Clark, however, opined that Daoud's waiver was knowing and intelligent. Specifically, he concluded that Daoud clearly knew he was talking to the police, that his statement was coherent, sequential, and lacked the markers of a psychotic statement, and that he did not indicate any difficulty in understanding that the officers would use his statements in court. Thus, Dr. Clark believed Daoud was able to waive his *Miranda* rights when he confessed.

Because these two experts disagreed, the court appointed a third expert, Dr. Grisso of the University of Massachusetts Department of Psychiatry, to testify regarding Daoud's competence. Dr. Grisso testified that his opinion regarding Daoud's ability to waive his *Miranda* rights depended on Michigan's requirements for a valid waiver. If a knowing and intelligent waiver simply required a straightforward understanding of the *Miranda* rights, then he believed Daoud was capable of waiving those rights. However, if a knowing and intelligent waiver demanded an appreciation of the consequences, he believed that Daoud was not capable of waiving his rights.

Considering the testimony of the three experts, as well as the state trial court's factual conclusions regarding the credibility of the witnesses, the Michigan Supreme Court's conclusion was not unreasonable. As the Michigan Supreme Court explained, the trial court found that Daoud had an intellectual understanding of his rights. *Daoud*, 614 N.W.2d at 163 (quoting the trial court's conclusion that "this case presents a defendant with the intellectual capacity of understanding the rights which [were] read to him"). The experts all agreed that Daoud comprehended what was said to him and understood that the officers would use his statements against him. They also all

appeared to agree that he understood he did not have to speak and that he could have an attorney. Because a defendant does not have to understand "every possible consequence of a waiver," *Spring*, 479 U.S. at 574, and the evidence demonstrates that Daoud had an understanding of his rights, the Michigan Supreme Court's conclusion that his waiver was knowing and intelligent was not an unreasonable application of federal law.

Our decision in *Hanna v. Price*, 245 F. App'x 538 (6th Cir. 2007), is not to the contrary. In *Hanna*, we granted a petition for habeas corpus on petitioner's claim that his *Miranda* waiver was involuntary. In that case, petitioner's physical and mental states were so severely strained at the time he confessed, that "[i]t [was] virtually impossible to conclude, under the totality of the circumstances . . . , that Hanna was able to think rationally such that he had the 'requisite level of comprehension' to have waived his rights 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* at 543 (quoting *Moran*, 475 U.S. at 421). In the case at hand, however, we do not have such an extreme set of facts from which it would be impossible to conclude that Daoud was able to waive his rights. Thus, on the record, it was not unreasonable for the state court to conclude that Daoud's waiver was knowing and intelligent.

## B. Ineffective Assistance of Counsel

The Supreme Court has established the following two-prong test to determine whether counsel provided ineffective assistance:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Michigan Court of Appeals, the last state court to review Daoud's ineffective assistance claim, correctly recited the standard set forth in *Strickland*. *See Daoud*, 2004 WL 2624877, at *3. Thus, we review

Daoud's ineffective assistance claim to determine whether the state court's decision was an unreasonable application of that law.

Under *Strickland*'s deficiency prong, Daoud must demonstrate that his counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 688. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged conduct might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). Daoud asserts that trial counsel was ineffective for failing to have him independently evaluated to determine whether he was insane at the time of the murder and for failing to assert an insanity defense.[2] The Michigan Court of Appeals rejected this claim, concluding that defense counsel was not deficient in his performance, because he did in fact explore the possibility of an insanity defense. In particular, trial counsel testified that he discussed the possibility of an insanity defense with the three experts that testified regarding Daoud's competency to waive his *Miranda* rights. However, none of these experts believed it was feasible to make a determination as to Daoud's mental state at the time of the murder, which occurred more than ten years earlier.

Daoud insists that the report submitted by Dr. Grisso, an independent examiner appointed by the court and not affiliated with the Forensic Center, put trial counsel on notice that Daoud was insane at the time of the offense such that he should have sought an independent evaluation. We find nothing to support that argument. Although Dr. Grisso's report focused on Daoud's competency to waive his *Miranda* rights, it noted that Daoud's friends and family did not notice any "odd or strange" behavior when he was between the ages of eighteen and twenty-one years old. Dr. Grisso further opined that it was not until two years after his mother's murder that he began to seriously

---

[2]Daoud also attempts to raise the issue of the state trial court's denial of his request for an independent medical examiner to assess the issue of his insanity defense. However, we decline to address this issue, because it is not an issue covered by the COA.

deteriorate, and that the early stage of Daoud's disorder did not set in until he was in his mid-twenties (he was twenty-two at the time of his mother's murder).

In addition, after trial counsel filed a notice of his intention to assert an insanity defense, the court ordered Dr. Kaplan, a fellow in forensic psychiatry at the Forensic Center, to examine Daoud to determine whether he was criminally responsible. According to Dr. Kaplan, Daoud was not mentally ill at the time of the offense. He also noted that it would be difficult to establish a diagnosis for Daoud, given his heavy substance abuse history. Dr. Kaplan concluded that Daoud did not meet the criteria for a finding of legal insanity.

"[A] counsel's failure to explore the possibility of a not guilty by reason of insanity defense through reasonable investigation, including the use of a qualified mental health expert, can rise to the level of constitutionally defective counsel." *Lundgren v. Mitchell*, 440 F.3d 754, 771 (6th Cir. 2006). However, the record before us indicates that trial counsel did conduct a reasonable investigation, including filing a notice of intention to seek the insanity defense. Based on that notice, Daoud's mental state was examined by a psychologist to determine whether he was capable of being criminally responsible for his actions. Additionally, trial counsel discussed the possibility of the defense with all of the experts who had interviewed Daoud as to his competency to waive his *Miranda* rights. According to trial counsel, each of the experts believed that he or she would be unable to assess his mental state at the time of the murder. Even if Daoud's appellate counsel has since found an expert who would conclude that he was insane at the time of the murder, the Michigan Court of Appeals's conclusion that trial counsel's performance was not deficient was not unreasonable. "[R]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005). There is no evidence indicating that any of the experts was not competent. "The question before [us] is not whether all mental health experts would agree on whether the defense was viable, but whether counsel's decision not to pursue the defense was a reasonable strategic choice." *Lundgren*, 440 F.3d at 772. The evidence in the record indicates that trial counsel's

choice not to pursue further the insanity defense was a reasonable strategic choice. Accordingly, the Michigan Court of Appeals's conclusion that trial counsel's performance was not deficient was not an unreasonable application of clearly established federal law.

**AFFIRMED.**