NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0573n.06

No. 09-2300

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 15, 2011*

LEONARD GREEN, Clerk

MOHAMMED AL-KHALIL,

   *Petitioner-Appellant*,

v.

SUSAN DAVIS, Warden,

   *Respondent-Appellee*.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

**O P I N I O N**

BEFORE:  SILER, COLE, and KETHLEDGE, Circuit Judges.

  **COLE, Circuit Judge.** Petitioner-Appellant Mohammed Al-Khalil appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Specifically, he argues that he received ineffective assistance from his state trial counsel, who purportedly failed to provide Al-Khalil's retained mental-health expert with the information necessary to render an informed opinion as to Al-Khalil's sanity at the time of the crime. Both the Michigan Court of Appeals and the district court disagreed. Because Al-Khalil has not shown that his trial counsel provided ineffective assistance, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

  In May 2005, a Michigan jury convicted Al-Khalil of kidnapping, assault with intent to do great bodily harm less than murder, mayhem, and felonious assault. Al-Khalil received 18 to 50 years' imprisonment on the kidnapping charge, and a lesser concurrent amount on the others.

Prior to the trial, Al-Khalil's counsel at the time, James F. Piazza, filed a notice with the state trial court that he planned to assert an insanity defense. Al-Khalil then was referred to the Michigan Forensic Center for a psychological evaluation. That evaluation ultimately opined that Al-Khalil was competent to stand trial and "criminally responsible for his conduct" towards the victim. Subsequently, Piazza requested and received public funding for an independent psychological evaluation. On the suggestion of the trial court, Piazza chose Dr. George Drozd as the independent psychological expert. After evaluating Al-Khalil on August 17 and 24, 2004, Dr. Drozd also found Al-Khalil competent to stand trial and "criminally responsible." Piazza then withdrew his insanity defense for Al-Khalil.

After Al-Khalil's conviction and concurrently with his appeal to the Michigan Court of Appeals, Al-Khalil filed with the trial court a motion for a new trial and for an evidentiary hearing as to whether Piazza rendered ineffective assistance of counsel. In relevant part, Al-Khalil argued that Piazza provided ineffective assistance of counsel by failing to provide Dr. Drozd with certain Forensic Center documents. In so arguing, Al-Khalil relies on the report of Dr. Steven Miller, a mental-health expert Al-Khalil hired after his conviction. The trial court denied his motion. Likewise, the Michigan Court of Appeals rejected Al-Khalil's claim. The Michigan Supreme Court denied his application for leave to appeal the Court of Appeals' decision.

Subsequently, Al-Khalil filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the U.S. District Court for the Eastern District of Michigan. The magistrate judge issued a Report and Recommendation suggesting that the district court deny Al-Khalil's claims. The district court summarily adopted the Report and Recommendation, but granted Al-Khalil a certificate of

appealability on the claim currently pending before us. Al-Khalil later sought to expand the scope

of his appeal; we declined that request.

## II. ANALYSIS

### A. AEDPA Generally and the Standard of Review

Because Al-Khalil filed his petition after April 24, 1996, the Antiterrorism and Effective

Death Penalty Act ("AEDPA") amendments to 28 U.S.C. § 2254 apply. *Lundgren v. Mitchell*, 440

F.3d 754, 762 (6th Cir. 2006). Under those amendments,

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant
> to the judgment of a State court shall not be granted with respect to any claim that
> was adjudicated on the merits in State court proceedings unless the adjudication of
> the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's determination is "contrary to" the clearly established law of the Supreme

Court under § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the

Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme

Court] on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000)

(opinion of O'Connor, J.). A state court's determination "involve[s] an unreasonable application

of" the clearly established law of the Supreme Court under § 2254(d)(1) if "the state court identifies

3

the correct governing legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

Al-Khalil's first contention is that we need not defer to the Michigan Court of Appeals' decision because it "couldn't get the *Strickland*[ *v. Washington*, 466 U.S. 668, 694 (1984),] standard right . . . , requiring that it be 'likely that the proceedings outcome would have been different,' or that counsel's ineffectiveness 'deprived defendant of a substantial defense' or that the error 'affected the outcome of this case' but never speaking to the reasonable probability of a different result," which is the test under *Strickland*. (Al-Khalil Br. 38 (quoting Mich. Ct. App. Decision, Dist. Ct. Docket No. 9-20, at 4).) Thus, he contends that the decision was "contrary to" *Strickland*. At oral argument, however, Al-Khalil was unclear as to whether or not he continued to advance this argument.

To the extent that Al-Khalil has not conceded the point, he seems to be correct. The Michigan Court of Appeals required Al-Khalil to establish "that, but for defense counsel's error, it is likely the proceeding's outcome would have been different." (Mich. Ct. App. Decision, Dist. Ct. Docket No. 9-20, at 4 (citing *People v. Henry*, 607 N.W.2d 767, 770 (Mich. Ct. App. 1999)).) Yet the U.S. Supreme Court in *Strickland* explicitly rejected an outcome-determinative approach in favor of one demanding a showing of simply a "reasonable probability" that the result would be different. *See Strickland*, 466 U.S. at 693-94. We have previously recognized as much—and held that language nearly identical to that used by the Michigan Court of Appeals was "contrary to" Supreme Court precedent. *See Smith v. Bell*, 381 F. App'x 547, 550 (6th Cir. 2010) (citing *Williams*, 529 U.S. at 405-06). Ultimately, our standard of review makes little difference in this case, for even under de novo review, Al-Khalil cannot establish that he received ineffective assistance of trial counsel.

4

**B. Ineffective Assistance of Trial Counsel**

Al-Khalil argues that he received ineffective assistance "where his trial attorney, with no strategic purpose, made a critical, outcome-determinative error in failing to provide a psychiatric expert, through discovery, with the material necessary to make a studied determination of criminal responsibility." (Al-Khalil Br. 2.)

**1. Generally**

The Supreme Court has held that the Sixth Amendment to the U.S. Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland*, 466 U.S. at 684-85. In *Strickland*, the Court articulated a two-part test for assessing when counsel is ineffective. *Id.* at 687.

First, we ask whether counsel's performance was deficient, because it "fell below an objective standard of reasonableness" as measured by "prevailing professional norms." *Id.* at 688. In assessing deficient performance, we must abide by the "strong presumption" that counsel's performance was professionally reasonable and must take care not to second-guess strategic decisions that did not bear fruit. *Id.* at 689. Nonetheless, we differentiate between "strategic choices made after thorough investigation of law and facts relevant to plausible options," and "choices made after less than complete investigation[, the latter of which] are reasonable precisely to the extent that reasonable professional judgment support the limitations on investigation." *Id.* at 690-91. Decisions not to investigate are assessed for "reasonableness," *id.* at 691, though "the deference owed" strategic determinations is dependent on "the adequacy of the investigation supporting those" determinations, *Wiggins v. Smith*, 539 U.S. 510, 521 (2003).

Second, we determine if the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 692. "Prejudice" constitutes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### 2. In Providing a Mental-Health Expert with Necessary Information

The Supreme Court has held that a defendant who "demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, . . . [has a constitutional right of] access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Ake v. Oklahoma*, 470 U.S. 68, 83 (1985). Nonetheless, the Court cautioned that "[a] defendant's mental condition is not necessarily at issue in every criminal proceeding." *Id.* at 82. Also, an "indigent defendant [does not have] a constitutional right to choose a psychiatrist of his personal liking." *Id.* at 83.

We have since fleshed out the dictates of *Ake*. Specifically, in *Lundgren v. Mitchell*, we reviewed the petition of a defendant who received funding for two clinical psychologists. 440 F.3d at 772. The psychologists, after performing their evaluations and meeting with counsel, nonetheless concluded that the defendant was criminally responsible. *Id.* Rejecting the defendant's ineffective-assistance challenge, we explained that "defense counsel *did* secure appropriate mental health experts and *did* make an adequate investigation into [the defendant]'s mental state and background well before the criminal trial." *Id.* The *Lundgren* court continued: "The question before this Court . . . is not whether all mental health experts would agree on whether the defense was viable, but whether counsel's decision not to pursue the defense was a reasonable strategic choice." *Id.* We

6

then observed that, "[t]o the extent that [the defendant]'s argument can be framed as counsel's failure to procure a mental health expert whose *conclusions were favorable* to [the defendant], [the defendant]'s claim must also fail. [A defendant] does not have a constitutional right to an expert whose conclusions favor [the defendant]." *Id.* at 772 n.5. Indeed, "[t]he Constitution does not require that an indigent criminal defendant be able to retain the expert of his choosing, only that a competent expert be made available." *Id.* at 772; *see also Matthews v. Parker*, --- F.3d ----, 2011 WL 2518895, at *17 (6th Cir. June 27, 2011); *Daoud v. Davis*, 618 F.3d 525, 532 (6th Cir. 2010).

Here, Al-Khalil contends that Piazza provided ineffective assistance of counsel in failing to provide Dr. Drozd with Al-Khalil's psychological reports from the Forensic Center and the jail. At the outset, we note that Dr. Drozd had a proper basis for his opinion—a basis facilitated by Piazza's assistance. Dr. Drozd "interviewed [Al-Khalil] on more than one occasion, considered the results of several objective tests, and reviewed [various] forensic records, police records, and court files." (Mich. Ct. App. Decision, Dist. Ct. Docket No. 9-20, at 4-5.) Dr. Drozd's report on Al-Khalil noted:

> Regarding the issue of Mr. Al-Khalil's competency to stand trial, . . . [t]he defendant's performance on [one cognitive test] is indicative of an average level of cognitive functioning. The results of the McAuthur [test] clearly indicate that he possesses a sufficient level of understanding of the legal process, shows an adequate capacity to rationally assist in his defense and demonstrates a good appreciation of the proceedings against him. Consequently, it is this psychologist's clinical opinion that the defendant is indeed competent to stand trial on the pending charges.

(Dr. Drozd Rep., Dist. Ct. Docket No. 1-4, at 47-48.)

Also, while he observed that Al-Khalil "presents with some ideas of reference bordering on the paranoid . . . , he was generally easily verbally redirected from such preoccupations [and t]here were no indicators of any acute psychotic symptomatology over the course of this evaluation." (*Id.*,

7

Dist. Ct. Docket No. 1-5, at 1.) Dr. Drozd thus concluded, regarding whether Al-Khalil was criminally responsible at the time of the crime, that, "based on an extensive analysis and integration of the evaluation outcomes delineated above and all the biographical data, it is this psychologist's clinical opinion that, Mr. Al-Khalil does not meet the criteria for being considered legally insane at the time of the alleged offenses." (*Id.* at 4.)

Attempting to combat the presumption that Piazza's actions vis-a-vis Dr. Drozd constituted sound trial strategy, Al-Khalil identifies "at least an inch to an inch and a half of documents," (Post-Conviction Mot. for New Trial Hr'g Tr., Dist. Ct. Docket No. 9-16, at 5), that he claims Piazza should have obtained. He further points to Piazza's post-trial statement that, "if there was [a way to get the aforementioned documents beforehand], then I made an error in not getting it to provide to Dr. Drozd." (*Id.* at 10.)

As an initial matter, such "admissions" by counsel are inadequate to establish ineffective assistance of counsel. *Cf. Young v. Miller*, 883 F.2d 1276, 1281 (6th Cir. 1989). Furthermore, as to the "inch and a half" of documents from the Forensic Center, Al-Khalil identifies only six documents "of note" from that presumably large stack: reports by Dr. George Watson, Dr. Michele Hill, Dr. Thomas Shazer, Dr. Wladimir Zarski, and admission and discharge summaries. Of those six—or, indeed, of the sixteen documents that Dr. Miller reviewed from the Forensic Center's files—none of them is in the record before us, except as summarized in Dr. Miller's psychological report on Al-Khalil. (*See* Dr. Miller Sept. 28, 2005 Rep., Dist. Ct. Docket No. 1-3, at 42-50, and No. 1-4, at 1-7.)

Yet even taking as accurate Dr. Miller's summaries of the relevant documents, we find them inadequate to carry Al-Khalil's burden of showing inadequate investigation and thus ineffective assistance of counsel. The documents to which Dr. Miller directs us are conflicting. A prison incident report simply notes that Al-Khalil threw a cup of liquid on a corrections officer. Dr. Watson found Al-Khalil criminally responsible and not legally insane. Dr. Thomas Shazer reached the same conclusion. Dr. Wladimir Zarski, in the course of ongoing treatment of Al-Khalil and as noted in an August 25, 2004 report, diagnosed Al-Khalil with "Schizoaffective Disorder, Depressed Mood," but did not explicitly opine on whether he was competent to stand trial or criminally responsible. (*Id.*, Dist. Ct. Docket No. 1-3, at 48, and No. 1-4, at 6-7.) Two admission and discharge summaries, as well as a report by Dr. D. Pascual, specified that Al-Khalil seemed to have "psychosis, not otherwise specified." (*Id.*, Dist. Ct. Docket No. 1-4, at 1-3, 6.) Like Dr. Zarski, these diagnoses did not directly bear on Al-Khalil's criminal responsibility or competency to stand trial. Only one clinician identified Al-Khalil as unfit to stand trial: Dr. Michele Hill. However, Dr. Hill did not perform a criminal responsibility evaluation, because of the conclusion that Al-Khalil was unfit to stand trial.

Drawing on the Supreme Court's opinion in *Ake* and our opinion in *Lundgren*, we conclude, as did the Michigan Court of Appeals, that "[t]he fact that another expert concluded after the trial that [Al-Khalil] was legally insane does not mean that Dr. Drozd would have reached the same conclusion had he reviewed the additional records from the Forensic Center." (Mich. Ct. App. Decision, Dist. Ct. Docket No. 9-20, at 4.) Al-Khalil has not provided us with the documents themselves, only their summaries as present in Dr. Miller's report. Assuming those summaries are

reliable, however, they still provide at best conflicting conclusions on Al-Khalil's mental state, and none of them explicitly states that Al-Khalil was not criminally responsible at the time of the crime—the key question before us. Furthermore, even such a statement would simply establish that two professionals might disagree on Al-Khalil's mental state; we have no reason to believe that such a report would have convinced Dr. Drozd to change his mind. In sum, Al-Khalil had no right "to procure a mental health expert whose conclusions were favorable" to Al-Khalil, so Piazza's performance was not deficient and Al-Khalil's challenge must fail. *See Lundgren*, 440 F.3d at 772 n.5; *see also Ake*, 470 U.S. at 83. We conclude that Piazza was not constitutionally ineffective for failing to provide Dr. Drozd with the Forensic Center documents.

### 3. Remand

Finally, we reject Al-Khalil's request for a remand—be it to the district court or back to the Michigan courts—for an evidentiary hearing, as Al-Khalil has not identified any further information that he would seek or provide on remand that he could not have sought or provided in the current proceedings. *Cf. Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001) ("Consistent with *Williams v. Taylor*, therefore, we conclude that petitioner is not precluded from an evidentiary hearing as he exercised the necessary diligence in attempting to establish the factual record in state court.").

### III. CONCLUSION

Therefore, for the reasons detailed above, we **AFFIRM** the judgment of the district court.