NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0767n.06

No. 13-5643

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 07, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,            )
                                     )
        Plaintiff-Appellee,          )
                                     )        On Appeal from the United States
v.                                   )        District Court for the Eastern
                                     )        District of Kentucky
                                     )
JOSEPH A. WEIR,                      )
                                     )
        Defendant-Appellant.         )
                                     )
_____/     )


BEFORE: GUY, ROGERS, and DONALD, Circuit Judges.

**RALPH B. GUY, JR., Circuit Judge.** In December of 2012, a jury convicted Joseph Weir of kidnapping in violation of 18 U.S.C. § 1201(a) and brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Later that month, a jury convicted Weir of armed bank robbery under 18 U.S.C. § 2113(a) & (d) and another count of possessing a firearm in furtherance of a crime of violence under 18 U.S.C. § 924(c)(1)(C)(i). Weir was sentenced to 711 months of imprisonment. In this direct appeal, Weir claims numerous errors at trial and sentencing. We find no merit to Weir's claims and **AFFIRM** his conviction and sentence.

**I.**

On May 31, 2011, Weir approached Ann Ernst, a 75-year-old woman, while she was sitting in her car at a mall in Crestview Hills, Kentucky. He ordered her – while displaying a gun and knife – to move to the passenger seat of the car. He then drove them in her car into Ohio while demanding that she disclose the PIN to her bank account. Ernst never disclosed that information. Weir eventually took Ernst to a secluded area where he gagged and tied her to a tree while he drove away in her car with her purse. He later abandoned the car after taking a small amount of cash from Ernst's wallet and some of her personal belongings. Weir used Ernst's bankcard to purchase a carton of cigarettes and some gas.

On December 5, 2011, Weir entered the Huntington National Bank in Covington, Kentucky where he handed the teller a note that read, "I want your 100s and 50s. I will shot [sic] you." The teller complied and Weir made off with $900 in cash. Weir never displayed a gun during the robbery, but the teller believed Weir was pointing a gun at her through his jacket pocket. Weir took the money and note before leaving the bank.

On January 31, 2012, Detective Jim West with the Covington police department received a tip that Weir committed the December 5th bank robbery. Weir was brought in for questioning on February 5, 2012. After being read his *Miranda* rights, Weir confessed to both the bank robbery and the kidnapping. Weir shared extensive and accurate details about both crimes, while also disclosing that he used a loaded revolver during the kidnapping and an unloaded black semi-automatic .380 caliber handgun during

the bank robbery. The confession was recorded and a redacted portion of it was entered into evidence at Weir's later trials. Weir later testified at the kidnapping trial that he had lied in his confession when he told Detective West that he had a loaded gun during the kidnapping – Weir claimed that he had actually used a toy pellet gun that he had painted to look like a ".357."

Prior to his trials, Weir filed a motion to suppress his February 5th confession. The court denied his motion.

On December 3, 2012, Weir was tried for kidnapping (Count 1) and brandishing a firearm in furtherance of a crime of violence (Count 2). A jury convicted him of both counts. On December 18, 2012, Weir was tried for armed bank robbery (Count 3) and another count of possessing a firearm in furtherance of a crime of violence (Count 4). Once again, the jury convicted him of both counts. The same judge that presided over both trials sentenced Weir to 711 months of imprisonment. Weir filed this timely appeal where he alleges several claims of error. We address each in turn.

## II.

### A.      Miranda Waiver

Weir argues that the district court erred in denying his motion to suppress his February 5, 2012 confession because he never affirmatively waived his *Miranda* rights and instead made an ambiguous request for an attorney. He also argues that he was under the influence of drugs and alcohol at the time of his confession, making any waiver invalid. Finally, Weir makes a general argument that his confession was not voluntary.

"[A] suspect may waive his *Miranda* rights 'provided the waiver is made voluntarily, knowingly, and intelligently.'" *Daoud v. Davis*, 618 F.3d 525, 529 (6th Cir. 2010) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). "When reviewing the denial of a motion to suppress a statement allegedly taken in violation of a defendant's *Miranda* rights, we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Lawrence*, 735 F.3d 385, 436 (6th Cir. 2013), *petition for cert. filed*, (U.S. July 1, 2014) (No. 14-5064).

### i.    Waiver

Weir first claims that although he expressed that he understood his *Miranda* rights, he never affirmatively waived such rights.[1] The district court correctly rejected this argument.

> [*Miranda v. Arizona*] does not impose a formalistic waiver procedure that a suspect must follow to relinquish [his] rights. As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford.

*Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010); *see also United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009) (internal quotation marks omitted) ("[W]aiver may be clearly inferred . . . when a defendant, after being properly informed of his rights and indicating that he understands them, nevertheless does nothing to invoke those rights and speaks.").

---

[1] The government does not contest Weir's claim that he was in police custody and entitled to a *Miranda* warning.

Weir implicitly waived his rights. He was read a *Miranda* warning and he acknowledged that he understood it.[2] Weir then proceeded to answer Detective West's questions about his living situation, livelihood, arrest history, and prior drug use – all without an attorney present. Assuming Weir's statements were not coerced (a question we resolve below), they establish an *implied* waiver of his *Miranda* rights. *See Berghuis*, 560 U.S. at 384 ("Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent.").

It was only after answering West's questions for about ten minutes that Weir stated, "I'm honestly undecisive, you know, I'm undecided . . . of making a statement, without [a lawyer] . . . I'm not saying, you know, hey I want an attorney, I'm not saying the word." Weir argues that West was required to stop questioning at this point to resolve whether Weir did in fact want an attorney.

As the district court correctly held, Weir's statement was not ambiguous; Weir made clear that he was *not* requesting an attorney. What is more, his statement that, "I am honestly . . . undecided . . . of making a statement without [a lawyer]," establishes that he knew he had the right to request an attorney and he was not yet prepared to make that request.

---

[2] When Detective West asked Weir, "do you understand each of these rights that I've explained to you?" Weir nods and says "Uh-huh, yes." West then reminds Weir that he can "stop questioning at any time." Weir states, "Okay, I understand, I can invoke my rights." West asks, "What's that?" and Weir repeats, "I said, I understand, I can invoke my rights. And plead the fifth or whatever. I know."

**ii.      Weir's Sobriety and the Voluntariness of His Confession**

Weir contends that his sobriety at the time of his February 5, 2012 confession was "severely compromised," making his waiver invalid. In support of his argument, Weir notes that he vomited three times during the interrogation, was sweating "profusely," and argues that he had been using heroin, marijuana, and percocets in the days preceding the interrogation. The district court rejected these arguments, as do we.

The district court found that Weir was alert, cooperative, able to form questions while in police custody, did not slur his speech, showed no signs of intoxication, was able to recall personal information, and relayed specific details of the crimes he committed. After reviewing Weir's video-recorded confession, we cannot say that such findings were clearly erroneous. Based on these findings, we agree with the district court's conclusion that Weir was sufficiently sober to knowingly and intelligently waive his *Miranda* rights.

Weir argues that because he had previously ingested heroin, his confession was not voluntary. We disagree. First, police coercion is a necessary predicate to a finding that Weir's confession was not voluntary. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986). We have outlined three requirements to find "that a confession was involuntary due to police coercion: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999).

The only police coercion Weir can point to is the following statement by Detective West:

> . . . you have this, I, what I'm going to say is this opportunity won't come back at you because you know you're going to be arrested today and then you already know what an attorney is going to tell you, don't say anything… That's just what they say. No matter who you are, what the crime is, what has ever occurred, that's just what they tell you, because they want to deal with me rather than you. So, the chance isn't going to come back at you is what I'm saying.

Far from being "objectively coercive," such assessment seems reasonable given the circumstances.

Second, the district court found that there was nothing to alert Detective West to the fact that Weir could be under the influence of drugs or alcohol. Weir told Detective West that his vomiting was due to a "bug" and the stress of the situation. That finding, in addition to the district court's finding that Weir did not exhibit signs of intoxication, is not clearly erroneous. Given that West did not know of Weir's alleged intoxication, we cannot say that his confession was coerced. *See Hill v. Anderson*, 300 F.3d 679, 682 (6th Cir. 2002) (noting that a lesser quantum of coercion is necessary to find a confession involuntary where the interrogating officer ***knows*** the defendant is intoxicated).

## B. Juror #340

Weir next argues that the district court erred when it did not disqualify Juror #340 from the kidnapping trial because of her relationship with the victim, Ann Ernst. Specifically, Juror #340's sister's husband's brother had been married to Ernst's daughter. Ernst's daughter was also a godparent to one of Juror #340's nephews. Juror

#340 realized and disclosed this fact to the court after Ernst testified; she told the court that the relationship would not impact her ability to be objective. The court accepted the juror's statement and allowed her to remain on the jury. Weir then moved for a mistrial, which the court denied.

We review the court's denial of Weir's motion for a mistrial for an abuse of discretion. *See United States v. Moore*, 917 F.2d 215, 220 (6th Cir. 1990). We presume that the court's finding that Juror #340 could remain impartial was correct, "rebuttable only upon a showing of clear and convincing evidence." *Dennis v. Mitchell*, 354 F.3d 511, 520 (6th Cir. 2003).

Weir fails to point to any clear and convincing evidence of Juror #340's bias. Instead, he argues that Juror #340's relationship with Ernst resulted in an "implied bias," which deprived him of his right to a jury trial by a panel of impartial jurors. Weir cites Justice O'Connor's concurring opinion in *Smith v. Phillips* for the proposition that implied bias remains a viable ground for juror disqualification, including the situation where the juror is a "close relative of one of the participants in the trial or the criminal transaction." 455 U.S. 209, 222 (1982). We have questioned the continued viability of the "implied bias" doctrine since *Smith v. Phillips*. *See Johnson v. Luoma*, 425 F.3d 318, 326 (6th Cir. 2005). Even assuming implied bias is still a basis for juror disqualification (a question we do not answer), the relationship at issue in this case (where the juror's sister's husband's brother had been married to the victim's daughter) is not sufficiently

close to warrant the doctrine's application. Accordingly, there was no abuse of discretion in the trial court's denial of Weir's motion for a mistrial.

## C.      Application of *Alleyne v. United States*

At his kidnapping trial, Weir was convicted under 18 U.S.C. § 924(c)(1)(A)(ii) for brandishing a firearm in furtherance of a crime of violence. At his bank robbery trial, Weir was once again convicted under 18 U.S.C. § 924(c). Although the jury did not find beyond a reasonable doubt that this was Weir's second conviction under § 924(c), that fact led the court to impose a mandatory minimum term of imprisonment of 25 years on Weir's sentence. 18 U.S.C. § 924(c)(1)(C)(i). Weir argues that under the Supreme Court's recent holding in *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the government was required to prove beyond a reasonable doubt that this was Weir's second conviction under § 924(c). We do not agree.

In *Alleyne*, the Supreme Court held that any fact that increases the defendant's mandatory minimum sentence "is an 'element' that must be submitted to the jury." *Alleyne v. United States*, 133 S. Ct. at 2155. The Court made clear that its holding in *Alleyne* did not apply to prior convictions. *Id*. at 2160, n.1 ("In *Almendarez-Torres v. United States,* 523 U.S. 224 (1998), we recognized a narrow exception to this general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today.").

Weir argues that *Almendarez-Torres* is no longer binding on our Court in light of *Alleyne*. We have already considered this argument and rejected it. *See United States v.*

*Nagy*, 13-4151, 2014 WL 3632362, at *3 (6th Cir. July 24, 2014) ("Nagy frames 'the seminal question' in his case as, 'is *Almendarez-Torres* still good law based on the Supreme Court cases over the last fifteen years [?]' The most recent of those precedents, *Alleyne*, leaves no doubt that it is."). There is no error on this point.

**D.      Sufficiency of the Evidence**

Weir challenges the sufficiency of the evidence for both his kidnapping and two firearm convictions. When we review such challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Weir preserved this issue for appeal when he moved for judgment of acquittal in both trials at the close of the government's case and his case. The district court denied those motions. We review that decision de novo. *United States v. Algee*, 599 F.3d 506, 512 (6th Cir. 2010).

**i.      Sufficiency of the Evidence – Kidnapping**

For the kidnapping charge, Weir claims that the government failed to prove that he had the specific intent to commit the kidnapping because he was intoxicated and, additionally, because he took Ernst to get her money from the ATM, which was "collateral to a theft and not a kidnapping." We find no merit to either argument.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have determined that Weir was not sufficiently intoxicated to lack the requisite intent to commit the kidnapping. The jury heard evidence that Weir drove Ernst

from Kentucky to Ohio, repeatedly demanding her PIN so he could access the funds in her bank account, and eventually locating a secluded location to tie her up to ensure he could avoid capture. All of these actions support the jury's finding that Weir had the specific intent to kidnap Ernst and willfully transport her across state lines. *See* 18 U.S.C. § 1201(a)(1). And Weir's taking of Ernst in an effort to coerce her into giving him her PIN satisfies 18 U.S.C. § 1201's requirement that he held Ernst "for ransom or reward or otherwise." *See Gooch v. United States*, 297 U.S. 124, 128 (1936) (noting that kidnapping an individual with the purpose of securing money satisfies this requirement).

Weir next challenges the sufficiency of the evidence to support his § 924(c) conviction. That conviction is supported by the record. Ernst testified that Weir used a real gun during the kidnapping. She based this assessment on her past experience with and exposure to firearms. Ernst's description of Weir's gun matched the description that Weir gave during his February 5th confession. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Weir used a firearm in the course of the kidnapping and that such firearm was designed to discharge ammunition by way of explosion. *See* 18 U.S.C. § 921(a)(3).

### ii.      Sufficiency of the Evidence – Bank Robbery

Weir also challenges the sufficiency of the evidence to support his § 924(c) conviction in connection with the bank robbery. It is undisputed that during the course of the robbery, Weir never brandished a gun. But during his confession, Weir admitted that he carried a semi-automatic handgun in his jacket during the robbery. The government

also called witnesses who testified that Weir had access to such a handgun prior to the bank robbery. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that Weir possessed the handgun during the bank robbery.

Weir argues that his motion for judgment of acquittal should have been granted because his § 924(c) conviction is based solely on his uncorroborated admission that he used a handgun during the bank robbery. Weir's argument fails because there was independent evidence that bolstered Weir's confession "and thereby prove[d] the offense 'through' the statements of the accused." *United States v. Brown*, 617 F.3d 857, 863 (6th Cir. 2010) (citing *Smith v. United States*, 348 U.S. 147, 156 (1954)). Specifically, Samuel Carr, Weir's roommate prior to the robbery, testified that Weir had access to Carr's black .380 handgun prior to the offense. Another witness, Adeniyi Giwa, testified that he saw Weir in possession of a black .380 handgun in June of 2011. Such testimony bolstered Weir's confession to provide sufficient corroboration for purposes of the corroboration rule. *See United States v. Davis*, 459 F.2d 167, 171 (6th Cir. 1972) (internal quotation marks omitted) ("[C]orroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reasonable doubt that defendant is guilty.") There was also independent corroborating evidence that Weir robbed the bank, which provides sufficient evidence to corroborate his confession. *See Brown*, 617 F.3d at 863 ("If, for example, a

defendant admits that he drove a car that had an illegal sawed-off shotgun in its trunk, it is sufficient for the independent corroborating evidence to show that he drove that particular car.").

### E.    Jury Instruction

Weir requested that the following jury instruction be given during his bank robbery trial: "You may not convict the Defendant based solely upon his uncorroborated statement or admission."  The court gave that instruction, but added the following language to it:

> However, one available mode of corroboration is for the independent evidence to bolster the confession itself, and thereby prove the offense through the statements of the Defendant.  *So long as portions of the Defendant's statement are corroborated by substantial, independent evidence that tends to establish the trustworthiness of the statement, then the elements of the crimes may be established by the Defendant's statement*.

(Emphasis added).

We review a district court's decision to deny a jury instruction for an abuse of discretion.  *See U.S. v. Adams*, 583 F.3d at 468-69.  We "will reverse a jury verdict on account of an instructional error only in situations where the instruction, viewed as a whole, is confusing, misleading, and prejudicial."  *Id*. at 469 (internal quotation marks and brackets omitted).  Although Weir claims that the emphasized portion of this instruction was incorrect, it restates the rule noted in *United States v. Ramirez*, 635 F.3d 249, 257 (6th Cir. 2011).  Given that the jury instruction correctly stated the law, there is no basis to say that the judge abused his discretion in denying Weir's jury instruction request.

**F.      Sentence**

The court imposed a within-Guidelines sentence of 711 months of imprisonment. In arriving at this sentence, Counts 2 and 4 for possessing a firearm in furtherance of a crime of violence carried mandatory minimum sentences of 84 months and 300 months, respectively.   18 U.S.C. § 924(c)(1).   Pursuant to 18 U.S.C. § 924(c)(1)(D)(ii), those sentences had to run consecutively.   For Count 1 (kidnapping) and Count 3 (bank robbery), the court imposed a sentence of 327 months, which was at the high-end of the Guidelines range.   In arriving at the 327-month sentence, the court applied a two-point enhancement under U.S.S.G. § 3C1.1 (discussed below).

**i.      Two-Point Enhancement under § 3C1.1**

Weir claims that the sentencing court committed a procedural error in applying a two-point enhancement to his base offense level pursuant to U.S.S.G. § 3C1.1 for obstruction.   The district court applied this enhancement because it determined that Weir perjured himself at the kidnapping trial when he claimed that he did not use an actual handgun when he kidnapped Ernst.   Section 3C1.1 mandates a two-level increase to the defendant's offense level if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice," and such conduct related to the defendant's offense.   Perjury can form the basis for this section's application.   *See* U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 cmt. n.4(B) (2013).

When reviewing a sentencing court's application of an enhancement under § 3C1.1, "[w]e review the district court's factual findings for clear error and its

determination that [the defendant's] conduct constituted obstruction of justice—as well [as] its application of the two-level enhancement—de novo." *United States v. Watkins*, 691 F.3d 841, 851 (6th Cir. 2012) (citing *United States v. Camejo,* 333 F.3d 669, 674-75 (6th Cir. 2003)).

Weir challenges the district court's factual determination that he made a false statement at the kidnapping trial when he testified that the gun he used during the kidnapping "was, in fact, a pellet gun that looked like a .357," which he had painted to look like a real gun. The court credited Ernst's testimony that Weir used an actual handgun in the course of the kidnapping, noting that Ernst observed the firearm and had knowledge of weapons based on past experiences. The court did not find Weir's testimony that the weapon was actually a pellet gun that he had painted credible, and found that his testimony met the other elements of perjury.[3] This factual finding was not clearly erroneous and the obstruction enhancement was not in error.

### ii.      Procedural Reasonableness

Weir also claims that the court's sentence was not procedurally reasonable because it failed to grant him a downward departure pursuant to: (1) U.S.S.G. § 5H1.3 based on his attention deficit disorder, bipolar disorder, and manic depression; and (2) U.S.S.G. § 5H1.4 based on his drug abuse. At sentencing, Weir asked the court to consider his mental health and substance abuse issues as variances and not as departures. The court complied with Weir's request and therefore there was no error on this point.

---

[3] A defendant commits the offense of perjury when he: "(1) [makes] a false statement under oath (2) concerning a material matter (3) with the willful intent to provide false testimony." *U.S. v. Watkins*, 691 F.3d at 851 (citing *United States v. Dunnigan,* 507 U.S. 87, 94 (1993)).

Weir next argues that the court committed procedural error in failing to grant a variance based on his mental health and substance abuse issues. We review a sentence for procedural reasonableness to:

> ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range.

*United States v. Vowell*, 516 F.3d 503, 509-10 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Here there was no procedural error. Weir does not allege that the court erred in its calculation of the Guidelines range, that the court treated the Guidelines as mandatory, based its sentence on clearly erroneous facts, or failed to adequately explain its sentence. A review of the record reveals that the court considered all of the pertinent § 3553(a) factors, taking into account Weir's mental health and substance abuse issues, but determined that if the court were to grant a variance, the facts supported an upward rather than a downward variance. There was no error on this point and the court adequately explained the reasons behind its chosen sentence.

### iii.     Substantive Reasonableness

Weir's final argument is that his sentence is not substantively reasonable. Because Weir's sentence was a within-Guidelines sentence, we presume it is substantively reasonable. *United States v. Garcia*, 758 F.3d 714, 724 (6th Cir. 2014). In assessing the substantive reasonableness of his sentence, "we look to whether the district court chose the sentence arbitrarily, based its sentence on impermissible factors, or gave unreasonable

weight to one of the § 3553(a) factors." *Id*. We review the sentence for an abuse of discretion. *Id*.

Weir makes a general argument that the sentence was greater than necessary to accomplish the goals of Congress and the Sentencing Commission. The court explicitly considered this question and decided that a sentence at the top of the Guidelines range was necessary to accomplish Congressional goals. The court noted, "Congress has seen fit to increase punishment for individuals who are convicted of offenses involving guns . . . I believe this case demonstrates that we have adequate gun laws on the books if we're willing to enforce those laws. And this Court is willing to do that."

The court went on to consider all of the various § 3553(a) factors in determining that a sentence at the top of the Guidelines range was appropriate. The court considered Weir's extensive criminal history, noting numerous thefts, assaults, and drug crimes. Although Weir argues that the court gave too much weight to his criminal history because the majority of his crimes were non-violent thefts and drug offenses, the court was concerned with Weir's violent crimes towards women, the number of crimes Weir committed, and Weir's tendency to become confrontational with authority. The court was also concerned that Weir's mental health issues and problems with drug abuse made him more likely to reoffend.[4] We find no abuse of discretion in the court's consideration of the § 3553(a) factors.

---

[4] Weir also cites the case of *United States v. DeMonte* for the proposition that because the *DeMonte* sentencing judge granted the defendant a downward departure for cooperating with the government, the court was compelled to grant Weir a downward variance because he disclosed to authorities that he was

Finally, Weir argues that the court should have considered the disparity between the time he will serve in federal prison and the time he may have served if he had been sentenced in state court and then granted parole. We have previously held that "it is impermissible for a district court to consider the defendant's likely state court sentence as a factor in determining his federal sentence." *United States v. Malone*, 503 F.3d 481, 486 (6th Cir. 2007). There is no error on this point.

**AFFIRMED.**

---

carrying a gun during the bank robbery. 25 F.3d 343 (6th Cir. 1994). The case is inapposite and the sentencing court did not abuse its discretion in its decision not to vary downward.